1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    ANTHONY WILLIAMS,                  :
                                        :   10-CV-01022 (SLT)
5                                       :
                        v.              :   225 Cadman Plaza East
6                                       :   Brooklyn, New York
     NYS OFFICE OF MENTAL HEALTH, *et al.*,:
7                                       :   March 27, 2012
                        Defendants.     :
8    ------------------------------------X

9
          TRANSCRIPT OF HEARING REGARDING CIVIL CONFERENCE
10            BEFORE THE HONORABLE JAMES ORENSTEIN
                UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:        ANTHONY WILLIAMS
                               *Pro Se*
14                             800 Barretto Street
                               Bronx, New York  10474
15
     For the Defendants:       JOSE L. VELEZ, ESQ.
16                             New York State Attorney General
                               120 Broadway - 24th Floor
17                             New York, New York  10271

18

19   Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
                               TypeWrite Word Processing Service
20                             211 N. Milton Road
                               Saratoga Springs, New York  12866
21

22

23

24

25

     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

2

1   (Proceedings began at 11:04 a.m.)

2           THE CLERK:  Civil cause for a status conference,

3   Williams v. New York State Office of Mental Health, et al.,

4   docket number 10-CV-1022.

5           Parties, state your appearances for the record.  The

6   plaintiff?

7           MR. WILLIAMS:  Anthony Williams.  Thank you.

8           THE COURT:  Good morning.

9           MR. VELEZ:  Jose Velez from the New York State

10  Attorney General's Office for the defendant served with

11  amended complaint.  Good morning, Your Honor.

12          THE COURT:  All right.  I asked you to come here

13  because, Mr. Williams, on February 22nd you filed a motion

14  requesting certain relief and then on March 13th you followed

15  that up with a document that was entitled, "Exhibit Related to

16  Action Pending Motions."  And forgive me, Mr. Williams, but

17  I'm simply unable to figure out from these documents what it

18  is you're asking for in your -- in the motion that you filed

19  in February, so I thought it would be useful to have you tell

20  me what the motion is and how it relates to the claims that

21  are still in this court where you're seeking damages for what

22  happened to you during a previous confinement.

23          MR. WILLIAMS:  Actually, on -- on -- these paper was

24  filed on December and what happened is --

25          THE COURT:  I'm not talking about something filed in

3

1   December.

2           MR. WILLIAMS:  And --

3           THE COURT:  Mr. Williams, I'm asking you about the

4   document you filed on February 22nd that you captioned as a

5   motion.  Do you know which document I'm talking about?

6           MR. WILLIAMS:  Wait a second.

7           THE COURT:  Mr. Velez?

8           MR. VELEZ:  135.  This one.

9           THE COURT:  Yeah.  No, no.

10           MR. WILLIAMS:  Oh.

11           THE COURT:  Oh, I see because --

12           MR. WILLIAMS:  I think it -- the afore-mentioned --

13   the petition, understanding it's in ...

14           THE COURT:  You notarized it yourself so it was

15   sworn to you before --

16           MR. WILLIAMS:  Yeah.  I know, but --

17           THE COURT:  Before yourself on the 14th day of

18   February.  Does that help?

19           MR. WILLIAMS:  Yeah.  What happened was these

20   special -- this paper was filed in November and they was never

21   received by the Court.

22           THE COURT:  Okay.

23           MR. WILLIAMS:  So somehow in the confusion with

24   delay I guess it was before the motion to ask that the

25   petitioner prays and asks the Court to find defendant acted

4

1  with the -- the medical indifference and other custom and

2  policy because in December the defendant, the Office of Mental

3  Health, took me to the -- took me to Bellevue Hospital for

4  inpatient evaluation.  And at that inpatient evaluation I was

5  forcibly drawn blood and they then to inject me with

6  medications no simple [ph.] reason except for December 30.

7  And that's when the paperwork was filed for the preliminary

8  injunction which they see then with the forward to the mail.

9          So why I was in the hospital, which is an error, my

10  lawyer had a lawyer on the action who -- I said in the letter

11  that I think these are exhibits in 35 -- a letter from a

12  Robert V. Clow [Ph.], Attorney, and it say that the 730 issue

13  was a mistake.  So I was still forcibly admitted to the

14  hospital against my will and my blood against my religion was

15  drawn and forcibly -- I was forcibly admitted for no apparent

16  reason except for inpatient evaluation.

17          THE COURT:  Okay.  But I'm sorry to interrupt.  The

18  case that's in this court --

19          MR. WILLIAMS:  Yeah.

20          THE COURT:  -- is one where you're seeking to be

21  paid money damages --

22          MR. WILLIAMS:  Yeah.

23          THE COURT:  -- because of past times --

24          MR. WILLIAMS:  Yeah, yeah.

25          THE COURT:  Just let me finish.  Past times when you

5

1   were medicated against your will.

2        MR. WILLIAMS:  Yeah.

3        THE COURT:  What has this incident in -- at the end

4   of last year to do with the case that you've got before this

5   court?

6        MR. WILLIAMS:  Well, according to the mental hygiene

7   law, the commiss -- the commissioner, who is the defendant,

8   you know, his -- his duty -- his fairly [ph.] civil duty on

9   the law is the issue of policies against citizens being held

10  unreasonable or for -- or for other malpractices.  His duties,

11  you know, entails on protecting on persons from these

12  hospitalization duties and he is -- he is the defendant in

13  this action and it was a repeat of the same policies and

14  customs in the fact that resulted in my injury.  And at that

15  time I have several other persons submit exhibits and petition

16  about Kevin Gordon [Ph.], who had been going through the same

17  730 thing for ten years, of Lester Madison [Ph.] who had been

18  going through for 25 years, which is unconstitution any form

19  or fashion, you know.  The Constitution forbids any type

20  of any pretrial or any criminal trial over three years even

21  for mental illness.  These persons should have been sent to

22  hospital when they can't dispense but that's not a policy --

23        THE COURT:  I'm sorry.

24        MR. WILLIAMS:  -- but I'm just saying --

25        THE COURT:  All right.  So I don't understand what

6

1  you're telling me about the other people.

2            MR. WILLIAMS:  All right.

3            THE COURT:  Are you saying --

4            MR. WILLIAMS:  Yeah.

5            THE COURT:  -- just listen to me now.  Are you

6  asking for something to be done about harms that were done to

7  these people or are you saying that what happened to them is

8  evidence about what happened to you?

9            MR. WILLIAMS:  No.  What happened to them is exactly

10 what happened to me.

11           THE COURT:  I see.

12           MR. WILLIAMS:  You know, it's indifference,

13 malpractice, and abusive policies because in December I

14 specifically asked under the 730, you know, it says a person

15 that's to be to 730 could have a doctor -- a doctor or his

16 lawyer present and specific motion and it was defied [Ph.],

17 even when I was supposed to have been admitted on the 29th of

18 January to Bellevue, my lawyer was not notified.  And for all

19 purposes --

20           THE COURT:  You mentioned a lawyer a couple of

21 times.

22           MR. WILLIAMS:  Yeah.

23           THE COURT:  Do you have a lawyer?

24           MR. WILLIAMS:  On the other [indiscernible] matter.

25           THE COURT:  Okay.  So why are you bringing these

7

1   things that happened at Bellevue and Manhattan into the case

2   that's pending in Brooklyn?  What does that have to do with

3   it?

4          MR. WILLIAMS:  It's the same policy and customs that

5   happened to me with the prior thing and they would have let

6   the same injury I would have --

7          THE COURT:  Well, what's happened?  Did it cause any

8   harm?

9          MR. WILLIAMS:  Actually, what happened was because I

10  had a letter from my lawyer dated December 8th that they said

11  that it was drawn since December and on December 29th it

12  seemed -- Bellevue Hospital, you know, went without any

13  authorization legally and produced to have me committed.  I'm

14  tracked to be committed -- I was released -- I was released

15  when the error was corrected, but this was after my blood was

16  drawn.  This is after the preliminary injunction that I saw

17  was delayed in the mail.

18         So, you know -- and it's been -- it seemed, you

19  know, it's not only it seems, you know -- you know, yeah, I --

20  yeah, I was injured by the lack of the mail [ph.] and my due

21  process under 730 law to have a doctor present or my lawyer

22  present and I was forcibly admitted.  It was the same policy

23  by the defendant, same defendant and it would have led to the

24  same thing.  The next step they would have sent me back to the

25  state hospital and once there their policies they don't uphold

8

1    the law on the mentioned ID -- the New York City rules and

2    regulation 278 or 279 that said before a person can be taken

3    to court they're supposed to be, you know, recommended by --

4    have an independent psychiatric review.

5           And it's evidence it caused me three years in the

6    past and judgment was filed to circumvent that it would happen

7    again or discrimination basing on what was mentioned all

8    history, whatever case.  So even if not -- does determine the

9    commissioner trying to have me committed because the whole

10   commitment was based on fraud.  It stated that my learn -- my

11   attorney was -- and I sent the court a copy of the patient

12   report and patient evaluation.  It was -- it said it was

13   ordered 610, 211.  That was a falsehood.  And this is from the

14   commissioner.  That is from some forensic -- the

15   commissioner's office.  And it said the attorney -- the

16   attorney was false [ph.], and the date of the order was false,

17   and it's why I'm here today through the grace of God.

18          But, you know, one doesn't have to -- when one seeks

19   federal intervention of civil rights, you know, because

20   after -- the injection could have killed me.  I could have

21   been -- you know, it could have caused a side effect.  It

22   could have caused depraved mental indifference.  I mean, it

23   could have affected my consciousness or my sanity to a degree

24   so these injuries or not -- it's not relative injuries.  These

25   are actual and present threats and that's why I filed the

9

1   injunction.  And, you know, these had better be --

2           THE COURT:  So what you're asking for in the motion

3   that you filed in February --

4           MR. WILLIAMS:  Yeah.

5           THE COURT:  -- is an injunction -- I'm sorry -- is

6   an injunction against whom and what is it that you want to

7   enjoin?

8           MR. WILLIAMS:  New York State from performing 730s,

9   the commissioner from -- who's in charge of setting the rules

10  and the procedures to either set who the procedure is

11  conducive to the AMA or the APA association of federal rules

12  and guideline for mental illness or mental deficiency.  You

13  know, you can't just --

14          THE COURT:  All right.

15          MR. WILLIAMS:  -- telephone him at Mental Health and

16  we're going to commission you to a hospital.

17          THE COURT:  I don't -- you're -- I don't want the

18  argument.  I just want to be sure --

19          MR. WILLIAMS:  Yeah.

20          THE COURT:  -- I understood what it was you were

21  asking for.

22          MR. WILLIAMS:  Yeah.

23          THE COURT:  So you want an injunction that requires

24  New York State and the other entities that you need --

25          MR. WILLIAMS:  From acting --

10

1        THE COURT:  Excuse me.

2        MR. WILLIAMS:  Yeah.

3        THE COURT:  To follow certain procedures before

4   seeking to medicate you.

5        MR. WILLIAMS:  No, no.  Not only to medicate before

6   the person in --

7        THE COURT:  In --

8        MR. WILLIAMS:  -- in involuntary situations.

9        THE COURT:  Okay.

10        MR. WILLIAMS:  And involuntary patient.

11        THE COURT:  All right.  So --

12        MR. WILLIAMS:  Because the law states it's supposed

13   to be a 24-hour observation before a person is admitted.

14        THE COURT:  All right.

15        MR. WILLIAMS:  You know what I'm saying?  You

16   know --

17        THE COURT:  Okay.  Well, that helps because it helps

18   me to understand exactly what it is you're looking for in that

19   motion which frankly I didn't before.

20        MR. WILLIAMS:  New York --

21        THE COURT:  So -- okay, so let me ask you to stop

22   now because I want to hear from Mr. Velez to see what he has

23   to say about this.

24        And also ask you, if you would, Mr. Velez, to --

25   you've mentioned an amended complaint that you've been served.

11

1  If you could just explain what you have in mind because I

2  don't recall that.

3           MR. VELEZ:  I just -- the last part of the complaint

4  that I've been served?  I don't --

5           THE COURT:  Did he say you've been served with an

6  amended complaint when you identified yourself?

7           MR. VELEZ:  No.  What I said was I represented

8  defendants who have been served the amended complaint.  I

9  believe Mr. Williams has an amended complaint that's --

10          THE COURT:  Oh, okay.  So this is something from

11  some time ago.

12          MR. VELEZ:  Yeah.

13          THE COURT:  Okay.  Got it.

14          MR. WILLIAMS:  And may I say something?  It is

15  something from some time ago.

16          THE COURT:  Okay.

17          MR. WILLIAMS:  And I have not been able to amend --

18          THE COURT:  Mr. Williams, I'm sorry --

19          MR. WILLIAMS:  Yeah.

20          THE COURT:  -- but I really -- I gave you a chance

21  to speak.  I want to hear from Mr. Velez now, please.

22          So what do you say, Mr. Velez, about this latest

23  motion that I now understand --

24          MR. VELEZ:  Well --

25          THE COURT:  -- to be seeking injunctive relief.

1          MR. VELEZ:  Yes.  Your Honor, well, Mr. Williams was

2    released from state custody in December of 2010.  All the

3    actions and events he's talking about happened out in the

4    community, have nothing to do with the New York State Office

5    of Mental Health.

6          Indeed, apparently it looks like he was arrested and

7    eventually CPL'd 730.  It looks like he was examined by

8    criminal justice psychiatrists.  He was -- also got admitted

9    to a city hospital, Bellevue Hospital, which is a city

10   hospital.  It's not a state hospital.  So every event, every

11   action, everything that he's discussed has happened since he

12   was discharged from Primo [Ph.] Psychiatric Center December of

13   2010 and none of these events relate to any action taken by

14   New York State.

15         THE COURT:  This is Mental Health?  In other words,

16   does the Office of Mental Health have anything to do with the

17   actions complained of here?

18         MR. WILLIAMS:  Everything.  Everything --

19         MR. VELEZ:  The only --

20         THE COURT:  Excuse me.  Excuse me.  Please.

21         MR. VELEZ:  The only thing I can think of, Your

22   Honor, is I believe Office of Mental Health probably

23   licenses --

24         THE COURT:  Yeah.

25         MR. VELEZ:  -- psychiatric facilities throughout the

13

1   state, but they don't have any involvement in the running of

2   these facilities.  So, you know, again, nothing that has

3   happened here involves New York State Office of Mental Health

4   or any --

5            THE COURT:  Okay.

6            MR. VELEZ:  -- of the defendants that have been

7   represented by my office.

8            THE COURT:  Okay.  Before you respond, Mr.

9   Williams -- Lisa, will you print out for me document 125,

10  please?  Just -- I don't have it handy, my R&R.

11           All right.  Go ahead, Mr. Williams, while I'm

12  waiting for this document.

13           MR. WILLIAMS:  New York State mental hygiene law,

14  that New York State mental hygiene law which empowers both

15  CPEP, Community Psychiatric Emergency Program, and all the

16  other services of the mental health, even New York City or New

17  York State, which is for the CPEP is licensed and operated

18  under the rules of the commission, defendants came.  And major

19  hygiene law 3119, for example, defines the confinement, care,

20  and treatment of the mentally disabled, it said, "No

21  individual who is or appears mentally ill shall be detained,

22  deprived of liberty or otherwise confined to lawful authority

23  or medically on skillfully -- on simple care for -- or

24  supervised by any person."  It does not say New York City.  It

25  does not say -- it says "any person."  That's the government

14

1   mental hygiene law of New York State, which is based on the

2   Constitution criteria, the U.S. Supreme Court by treatment of

3   handicapped.  It's a handicap issue.  And in 3119 on the

4   bottom it say, "Nothing in this section shall prevent the

5   commissioner from taking whatever actions he deem necessary

6   for the suspension, revocation or limitation of this

7   [indiscernible] certificate of providing services which have

8   been showed embodies in this section."  And that's only one of

9   the duties that's entrusted upon the commissioner and that's

10  it.  It involved the CPEP, Community Psychiatric --

11            THE COURT:  All right.  Thank you, Mr. Williams.

12            MR. WILLIAMS:  You know, and like I said, this

13  order -- the order for the Bellevue [indiscernible], you know,

14  it comes from -- it comes from higher up.

15            THE COURT:  All right, Mr. Williams.

16            MR. WILLIAMS:  Yeah.

17            THE COURT:  All right.  Couple thoughts here and

18  then we'll rule on the motion [indiscernible].  I understand

19  you have a lot of concerns with the treatment you received at

20  various points after arrest and when you've been examined and

21  people have drawn blood.  One thing that I need you -- or I

22  hope you will understand is that even if you have a legitimate

23  complaint about those practices --

24            MR. WILLIAMS:  Yeah.

25            THE COURT:  -- they are not necessarily complaints

1  that you can bring as part of the court action pending here.

2  This case is about harm that you claim was done to you during

3  a previous --

4          MR. WILLIAMS:  Yeah.  Yeah.

5          THE COURT:  -- incarceration and you're saying

6  because of what was done then by state agency defendants

7  you're entitled to certain money relief.

8          Now, late last year -- I'm sorry.  No, forgive me.

9  In November of last year you were arrested and you were

10 ordered to undergo a psychological examination under Article

11 730.  As a result of that you brought a motion in this

12 court --

13         MR. WILLIAMS:  Yeah.

14         THE COURT:  -- for a preliminary injunction --

15         MR. WILLIAMS:  Yeah.

16         THE COURT:  -- and that was denied.  Right.  I wrote

17 a recommendation that it should be denied and I believe --

18         MR. WILLIAMS:  Well, that's it --

19         THE COURT:  Excuse me.  Please don't --

20         MR. WILLIAMS:  Yeah.

21         THE COURT:  Please don't interrupt me, if you would.

22 I've I'm not mistaken --

23         MR. WILLIAMS:  It wasn't denied.  It was ordered

24 him --

25         THE COURT:  That's upstanding.  Okay.  So that

16

1  recommendation remains outstanding.

2           MR. WILLIAMS:  Yeah.

3           THE COURT:  What I understand from what you've told

4  me today, the motion that you filed in February is essentially

5  the same motion.  In your arrest you were ordered for a 730

6  examination and you object to the way it's done.  You may have

7  good reason to object to it, but for the same reasons that I

8  said with respect to the last [inaudible] it's not part of

9  this case.  When I say this case this latest motion also

10 doesn't have anything to do with this case, at least in my

11 view.  So for that reason and the reasons set forth in my

12 report [indiscernible - microphone malfunctions] of

13 December 1, 2011, I'm going to respectfully recommend that the

14 Court deny this latest motion for preliminary injunctive

15 relief.

16          I want to explain some things.  I will let you speak

17 in a moment.  I just want to have a clear record what I'm

18 doing here so you can take whatever action you deem

19 appropriate.  The transcript of today's proceeding will be my

20 report and recommendation because I'm going to ask the

21 defendants to order a transcript and to provide a copy of the

22 transcript to Mr. Williams within 30 days and to put a

23 certification on the docket once that transcript has been

24 provided to Mr. Williams.

25          Mr. Williams, within 14 days of receiving the

17

1   transcript of today's hearing you can file objections to my

2   recommendation, basically ask Judge Townes not to accept my

3   recommendation because it's wrong for some reason.  Do you

4   understand that?

5           MR. WILLIAMS:  Yeah.

6           THE COURT:  Okay.  I understand that you very

7   sincerely think that you have a grievance arising out of this

8   latest episode and that the defendants here are the people who

9   should ask for it.  I understand you believe that.  I

10  disagree.  It doesn't seem to involve the State defendants

11  here.  There are other entities who appear to be involved.

12          In any event, it is not part of the case that was

13  brought for which you're seeking damages and I don't think

14  this is the appropriate forum to obtain the preliminary

15  injunctive relief that you've requested.  So for that reason

16  I'm recommending that the Court [inaudible - microphone

17  malfunction].  Want to say something?  You've been very

18  patient.  What do you have to say?

19          MR. WILLIAMS:  This suit is against abusive court

20  practices, not producing persons in court, doing underhanded

21  acts against the disabled, and for that reason it becomes a

22  very complicated discriminative or denied action of the court

23  for mental ill persons.  And the defendants -- the New York

24  State and the admission process to the State Hospital which

25  is -- starts at 730 it's another rule of sending a person to a

1  state hospital.  The 730 is the initial process and the doctor

2  at the 730 refer you for further hospitalization.  It's like

3  an admission process.  And at this admission process through

4  the state hospital these same 730 evaluators are bonded by law

5  and by who's the commissioner.  It states that in the law and

6  I'm trying to put on the 730 law right now that the

7  commissioner, you know, he appoints the evaluators.

8  Commissioner.  The State law 730 -- CPR 730 clearly lines that

9  the commissioner appoints who he wants to evaluate you.  You

10 know, nobody can do it.  Commissioner appoint.  You got the

11 request and he appoints where to be evaluated, who to be

12 evaluated and how.

13        And I would serve my, you know, high -- say-so on

14 the result of the evaluation because the report goes to him

15 before it goes to anybody else.  By the commission of New York

16 State.  That's under the CPL 730 law of New York State.  And

17 this is the person in the custody of the commissioner.  I'm

18 not looking for the custody.  I'm looking for the appointment.

19        Appropriate [indiscernible] where the defendant --

20 and this is my -- but the issue is, as in the past as this

21 case the issue does become involved with New York State and

22 the federal protection -- equal protection of law.  Where did

23 the statutory -- how you say it -- sedentary [ph.] substantial

24 interest and due process involved in law and the 730 -- and

25 all in the civil commitment procedures which attach them on to

1    the same thing and then what -- there is a statute protection

2    of law.  Like I put in my motion and I reiterate to you again

3    is that when a person asks for a lawyer present or secondary

4    opinion, it's supposed to be incompetent in any commitment

5    order.

6              The Office of Mental Health and the community mental

7    health which -- with the office of dementia, one of the

8    general policies and customs of the department, is not

9    upholding these rights of persons like I just mentioned in

10   the -- mentioned I go 731 when a person is accused of being

11   that and that should be certain criterioment [ph.] theirself

12   cur -- and that law and any other law and say, okay, you're

13   here.  You're going to go through the system and don't worry

14   about it.  The taxpayer, you pay money, and whatever money the

15   state generated and I said after then of several

16   persons one -- people have been there for ten years, people

17   have been there for twenty years and -- you know, and this

18   wasn't on a class action because it couldn't have settled

19   class action because we're pro se and they were problems

20   finding lawyers.  But in my petition it's okay for my first

21   complaint was filed there was no less than 50 persons that had

22   submitted petition and -- or without me, you understand, but

23   it's not a class action yet.  Haven't found a lawyer to the

24   class action.  I'm relying them on this same discriminative

25   instance.  It happened to me in the past and the threat is

20

1   still pending today.  You understand what I'm saying?

2           For whatever reason, you know, it's a big

3   discriminative issue against institutionalized person, the

4   1995 section of my lawsuit.  I cannot amend my lawsuit because

5   pending the order about the amendment and the discovery I

6   can't amend my lawsuit, but what I did do and I think I'm

7   entitled to do under the First Amendment ask the Court is read

8   the Court on these circumstances and issues and --

9           THE COURT:  You are, of course, entitled to ask.

10          MR. WILLIAMS:  And I --

11          THE COURT:  And I've --

12          MR. WILLIAMS:  Yeah.

13          THE COURT:  You have asked.

14          MR. WILLIAMS:  Yeah.

15          THE COURT:  I've given you an opportunity.  That's

16  why I brought you here.

17          MR. WILLIAMS:  Yeah.

18          THE COURT:  Because I wanted you to let me know what

19  it was you wanted.

20          MR. WILLIAMS:  And I'm saying this is not an

21  accident --

22          THE COURT:  Excuse me --

23          MR. WILLIAMS:  Yeah.

24          THE COURT:  Just because you ask doesn't mean you

25  get.

1          MR. WILLIAMS:  All right.

2          THE COURT:  And I've listened carefully to you.  I

3    understand what you're saying and I don't expect to be able to

4    persuade you, but my best understanding of how the law applies

5    to your request is that it is not one that should be granted

6    in this case.  And, therefore, I've made my recommendation.

7    I'm not going to alter it after what you've just told me and

8    really that's all we need to do today.

9          MR. WILLIAMS:  All right.  I know.

10         THE COURT:  So thank you, Mr. Williams, Mr. Velez.

11         MR. VELEZ:  Thank you, Your Honor.

12         THE COURT:  And today's proceeding is adjourned.

13         MR. VELEZ:  Thank you, Your Honor.

14         (Proceedings concluded at 11:34 a.m.)

15                        *  *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

22

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7    Ruth Ann Hager, C.E.T.**D-641

8    Dated:   March 27, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25