UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY WILLIAMS,                                          MEMORANDUM
                      Plaintiff,                AND ORDER
             - against -
NYS OFFICE OF MENTAL HEALTH, et al.,                       10-CV-1022 (SLT) (JO)
                      Defendants.
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

Defendants Kingsboro Psychiatric Center ("KPC") Director of Psychiatry Andrea Norton, KPC Psychiatrist Manjula Vikas and KPC Treatment Team Leader Barbara Burroughs move for dismissal of the Complaint filed by *pro se* plaintiff Anthony Williams ("Williams") due to his failure to discharge his discovery obligations. *See* Docket Entry ("DE") 190; DE 199; DE 204. Williams has filed a variety of motions seeking my disqualification, discovery relief, and sanctions against the defendants. DE 194; DE 196; DE 197; DE 198; DE 201; DE 203. For the reasons set forth below, I deny Williams's motions; I decline to recommend that the court dismiss the case; and I instead impose appropriate discovery-related sanctions against Williams as set forth below.

I.    Background

Williams commenced this action on March 5, 2010, claiming that the defendants, a group of entities and individuals providing state-sponsored mental health services, violated his civil rights. *See* DE 1 (Complaint); DE 8 (Amended Complaint).[1] Discovery began on February 11, 2011, when I held a status conference with the parties and then entered the following order:

> To accommodate the fact that the plaintiff is proceeding without counsel, the parties agreed to a streamlined discovery process. No later than March 11, 2011, Mr. Williams will produce to the defendants' counsel a written narrative statement setting out point-by-point the specific facts he expects to prove at trial (including a description of the defendants' actions that he believes violated his rights, as well as a description of the harms he claims to have suffered as a

---

[1] In addition to the movants, Williams has sued defendants New York State Office of Mental Health, Taylor Green, Michael F. Hogan, and NYS Mental Hygiene Legal Service, all of whom have been dismissed, *see* DE 158, as well as other named defendants who have never been served.

result), listing the witnesses he expects to call to prove such facts, and attaching copies of any documents, photographs, or other records he expects to offer as evidence. No later than April 11, 2011, the defendants will produce to Mr. Williams a similar responsive statement with witness list and documents. At the next conference, I will discuss a schedule for completing any remaining discovery tasks, including, if appropriate, a schedule for depositions.

DE 75 (minute entry).[2]

On April 2, 2011, Williams filed a letter on the docket which, although titled "The plaintiff expect to prove at trial and offer all evidence," did not contain the factual information about his claims he was required to provide. The letter's complete text is reprinted in the margin. *See* DE 89.[3]

---

[2] In the months between the filing of the Complaint and the beginning of discovery, the court addressed Williams's request for a preliminary injunction as well as the possibility of appointing a guardian *ad litem* or *pro bono* counsel to represent Williams. *See* DE 4; DE 23; DE 51.

[3] Sir: The plaintiff Anthony Williams deposes and says. He is familiar with the facts that are true and intends to prove at a trial that the defendants discriminatorily and with intention to benefit their careers and personal gains, did deprive the plaintiff of constitutional due process and did abuse the process, with medical indifference, did discriminate religious creed, belief, and applied for bodily intrusive procedure without the lawful due process afforded under US Constitution and NY State Constitution and New York State Substantial Law mandated at protecting a class of person[s] institutionalized and acted medical indifferent to the plaintiff in violation of the medical criteria DSM4 and with intention to cover up abuse of patients and their deprivation of careful procedure, and indifference, tried to dispense medication other than FDA approved usage. Furthermore the plaintiff intend to prove that a jury review was timely calendared and the failure of the defendant to produce the involuntary [illegible] and dominated, and against his will failed to produce at court hearing date, right guaranteed under NY state and federal constitution to petition the Government and Instrumental in NY State Mental Hygiene Law. "No patients shall be deprived civil rights." MHC 33,01. Major factor of process abuse, and deprivation under guise of state lawful procedure. The evidence expected to be produce includes court date, movement record Kingsboro, court dates minutes Kings County and Queens County a continuous policy and custom. The plaintiff plans to call 20 witnesses, hospital staff, city and state: Bellevue, Rikers Island, Kingsboro and Creedmore. Including several ex patient who suffered this discriminatory treatment and suffered the physical harm by fired mediator and he was denied jury review or lawful procedure under NY State Law MHL 9.27 and 9.35 and has suffered extensive stays with any recourse, due to lack of adequate counsel and severe side effect of over medication resulting in death. and that the petitioner has never harmed anyone or himself, nor ever has been convicted of any violent crime or offense, and that the detention was illegal, abuse of process, torture, unwarranted, [illegible] and discriminatory.

DE 89.

At the next status conference on May 2, 2011, the defendants sought to stay discovery pending the resolution of their motion for judgment on the pleadings. To accommodate that motion practice without imposing undue burdens on the parties, I ultimately granted the requested stay. *See* DE 104. Before doing so, I entered the following order to regulate discovery once it resumed:

> Once discovery resumes (either upon the denial of the motion to stay, or upon resolution of the anticipated motion to dismiss), the plaintiff will within one week provide to me and to the defendants' counsel a list of the witnesses he wishes to depose. For each such witness, the plaintiff will provide in writing the specific questions he wishes to have the witness answer. The plaintiff shall also provide any interrogatories he wants answered as well as any documents he wishes the defendants to produce. No later than three weeks after receiving the plaintiff's demands, the defendants will produce discovery to the extent they have no objection, and will submit to me any arguments as to why discovery to which they do object should not be produced. The plaintiff shall respond no later than one week after the date of the defendants' objections.

DE 94 (minute entry).

The court partially granted and partially denied the defendants' motion for judgment on the pleadings on March 31, 2014. DE 158. The parties took no further action until August 2014, when Williams filed a letter stating that he had never received the court's order on the motion. DE 160. Williams appended to that letter discovery demands including interrogatories and a request for the production of documents. DE 160-1; DE 160-2. He also filed a motion for sanctions against the defendants, DE 161, and a motion to compel discovery, DE 166. By order dated September 17, 2014, the court referred those motions to me. DE 172. I held a conference to discuss the motions on October 2, 2014. DE 177 (minute entry).

In seeking both discovery and sanctions, Williams primarily complained that the defendants had failed to disclose medical records that he had requested. *See* DE 161; DE 166. The defendants responded in their opposition papers that they had not produced the requested records to Williams at the facility in which he was incarcerated because he had asked for them to be available for inspection

3

and copying at the Attorney's General's Office, and because Williams had not responded when they sought his consent to mail the records to the jail in which he was lodged. *See* DE 168; DE 173. Based on these representations, I denied the motions for sanctions and to compel discovery. DE 177 (minute entry). In doing so I acknowledged my own role in the delay in restarting the discovery process once the motion for judgment on the pleadings had been decided several months earlier: "It's my fault, frankly, for not bringing you in sooner to have this conversation that we got to the point that there were these outstanding requests that hadn't been resolved." (Recording of October 2, 2014 Conference at 10:44 a.m.). I also issued a new case management and scheduling order to re-start the discovery process. As relevant here, I ordered Williams to serve on the defendants by October 17, 2014:

> (i) a written, point-by-point statement of each fact that he currently anticipates proving at trial; (ii) as a list of the names, addresses, and expected testimony of witnesses whose testimony he will present to prove such facts; and (iii) copies of the documents or other physical exhibits he will offer in evidence to prove such facts (or a description of such exhibits if copies cannot be provided).

DE 178 (Case Management and Scheduling Order).

Williams did not comply. A week after his disclosure deadline had passed, on October 24, 2014, the defendants moved to extend the discovery period due to Williams's failure to provide discovery. DE 182. Williams did not address that failure in his response; instead, he simply served additional document requests and interrogatories. DE 182-1; DE 182-2. He then moved to compel responses to the latter discovery demands. DE 188.

I held another conference on November 18, 2014. I explained to Williams that in light of his past failure to discharge his discovery obligations (which, in the earlier order, had preceded the defendants' corresponding obligations), I would not require the defendants to shoulder the burden of producing discovery until he had discharged his own disclosure obligations. *See* DE 186 (minute

entry); Recording of November 18, 2014 Conference at 2:55 p.m. ("I will order them to provide the information you've requested once you have provided the information I ordered you to provide. If you choose not to obey that order, I will not order them to comply, because you can't pick and choose the court rules that you'll obey.") I then terminated as moot Williams's motion to compel, DE 189, and entered an amended schedule for discovery that required Williams to complete his required disclosures by November 25, 2014. DE 187. I explicitly warned Williams that his failure to comply with my order could result in dismissal of his case. DE 186.

The defendants had received nothing from Williams by the next deadline, and therefore on December 3, 2014, they moved to dismiss his claims for failure to prosecute. DE 190. I ordered Williams to show cause in writing by December 17, 2014, why the court should not dismiss the case. DE 191. By letter dated December 22, 2014, Williams explained that he had attempted to mail the discovery materials to the defendants and the court on November 18, 2014, but that they were not delivered. DE 193. Accordingly, during a telephone conference on December 31, 2014, I afforded Williams one final opportunity to meet his discovery obligations by sending the required disclosures to the defendants and to the court by January 7, 2015; as before, I again warned Williams that failure to comply could result in a dismissal for failure to prosecute his case. DE 192 (minute entry).

Williams did not comply. Instead of making the required disclosures, Williams filed further discovery requests, motions, and other papers. Specifically he filed:

- additional interrogatories and document requests, DE 194;

- a request for admission of facts by the defendants, DE 195;

- a motion requesting court-ordered service of his interrogatories on Dr. Castelle, a defendant no longer employed by the state upon whom Williams had not served process, *see* DE 196; *see also* DE 41; DE 16;

- a motion seeking my disqualification, DE 197;

5

- a motion for an extension of the time to seek review of several of my orders, based on the failure of either the postal service or Clerk's office to transmit the motions listed above from Williams to the docket, DE 198; and

- a letter of complaint about my handling of this litigation, DE 200.

As none of Williams's filings included the disclosures required by my prior orders, the defendants filed a second motion to dismiss the Complaint for failure to prosecute on January 14, 2015. DE 199.

In April 2015, Williams filed several other documents with the court, including a motion to dismiss the defendants' counterclaim, additional copies of the motions summarized above, and a letter styled as a "motion to proceed" expressing frustration that he had not received any discovery from the defendants and concern that his motions were not being docketed. DE 201; DE 202; DE 203. The defendants then filed a third motion to dismiss. DE 204.

II. Discussion

A. Disqualification

The statute governing disqualification explicitly refers to a judge's obligation to "disqualify himself" in certain circumstances. 28 U.S.C. § 455(a). Consistent with that language, courts uniformly recognize that a motion to disqualify a judge must be directed in the first instance to the judge whose removal is sought, rather than to any other. *See, e.g.*, *In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir. 2002) ("The discretion to consider disqualification rests with the district judge in the first instance.") (citing *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988)); *see also LoCascio v. United States*, 473 F.3d 493, 498 (2d Cir. 2007) (stating that "a judge has an affirmative duty to inquire into the legal sufficiency of ... an affidavit" asserting a basis for his disqualification) (internal citations omitted); *Alfano v. Nat'l Geographic Channel*, 2007 WL 2982762, at *7 n.10 (E.D.N.Y. Oct. 5, 2007).

The fundamental question presented by Williams's motion for disqualification is whether "a reasonable person knowing and understanding all the relevant facts" would doubt my ability to be fair

in this case. *LoCascio*, 473 F.3d at 496 (quoting *United States v. Bayless*, 201 F.3d 116, 126-27 (2d Cir. 2000)); *see also United States v. Oluwafemi*, 883 F. Supp. 885, 890 (E.D.N.Y. 1995) (citing *DeLuca v. Long Island Lighting Co., Inc.*, 862 F.2d 427, 428-29 (2d Cir. 1988)). Stated differently, the facts set forth in the papers supporting the motion "'must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *LoCascio*, 473 F.3d at 498 (quoting *Wolfson v. Palmieri*, 396 F.2d 121, 124 (2d Cir. 1968)) (internal quotation marks omitted). Where that standard is not met, there is no basis for recusal and the judge is therefore "obligated not to recuse herself." *Oluwafemi*, 883 F. Supp. at 890 (citing *Drexel Burnham Lambert*, 861 F.2d at 1312; *Wolfson*, 396 F.2d at 124); *see also United States v. Amico*, 486 F.3d 764, 775 n.4 (2d Cir. 2007) (citing *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001)).

Williams predicates his motion primarily on his dissatisfaction with the discovery process in this case. Specifically, he claims that he was injured because I stayed discovery pending the resolution of the defendants' motion for judgment on the pleadings, and because I decided his discovery motions rather than the assigned district judge. He posits three reasons to conclude that I am now biased against him: I have admitted that the lack of discovery was my fault; I encouraged the defendants at the November 18, 2014 hearing not to provide Williams with any discovery; and I was involved in the Clerk's failure to docket his motions. *See generally* DE 197; DE 200.

To the extent Williams's motion is predicated on his belief that I have erred, perhaps even egregiously, in any number of pretrial rulings in this case, I must deny the motion. The only appropriate avenue for relief from any errors I have made is for Williams to ask the court to reverse, reject, or modify, as appropriate, any erroneous decision or recommendation I have made. *See* Fed. R. Civ. P. 72. Neither my errors (if any) nor the fact that Williams has challenged them is a basis for recusal. *See, e.g., Omega Eng'g, Inc. v. Omega S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005) ("Knowledge

7

gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1).") (citing *Katsaros v. Cody*, 744 F.2d 270, 283 (2d Cir. 1984)); *United States v. Kasman*, 1993 WL 278440, at *3 (E.D.N.Y. July 20, 1993) (referring to, and citing "just a few" of, "the countless cases which reiterate the principle that a motion to recuse under § 455(a) may be made only on the basis of alleged bias or prejudice from an extrajudicial source, not upon trial rulings or conduct").

To the extent Williams believes me to be actually or apparently biased because I have admitted that the lack of discovery was "my fault" and that I encouraged the defendants not to provide him with discovery, those concerns are baseless. Williams misconstrues the statements I made on the record. As that record plainly establishes, I simply apologized for not setting a discovery schedule immediately after the court's ruling on the motion for judgment on the pleadings: "It's my fault, frankly, for not bringing you in sooner to have this conversation that we got to the point that there were these outstanding requests that hadn't been resolved." (Recording of October 2, 2014 Conference at 10:44 a.m.). Moreover, I never encouraged the defendants to withhold discovery from Williams; rather, I merely pointed out that under the terms of my discovery order, they were not obligated to provide him with materials until he provided them with information about his claims and the facts he sought to prove. *See* Recording of November 18, 2014 Conference at 2:55 p.m. ("I will order them to provide the information you've requested once you have provided the information I ordered you to provide. If you choose not to obey that order, I will not order them to comply, because you can't pick and choose the court rules that you'll obey."). Likewise, his claim that I encouraged the Clerk's Office not to docket his motions is both untrue and unsupported by anything in the record. To the contrary, as reflected by the docket, I have repeatedly attempted to facilitate the discovery process for Williams as a *pro se* litigant, notwithstanding the fact that he has failed to take advantage of those opportunities to move forward

with his case. There is thus no reason for an objective, disinterested observer to believe that I have any disqualifying bias against Williams. I therefore deny the motion for my disqualification.

B. <u>Discovery and Dismissal</u>

Because the defendants seek dismissal on the basis of Williams's failure to comply with my discovery orders, I construe the motion as one seeking a discovery sanction rather than one addressed to the merits of Williams's claims. *See* Fed. R. Civ. P. 37. The applicable rule provides for a wide range of sanctions for a party's failure to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(A). Although the court has broad discretion in choosing an appropriate sanction, it should reserve the most severe punishments for the "rare" cases in which "they are necessary to achieve the purpose of Rule 37 as a credible deterrent." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). In general, a drastic sanction like dismissal or evidence preclusion is only warranted if the noncompliance has been "willful, or in bad faith, or otherwise culpable." *Luft v. Crown Publ'rs., Inc.*, 906 F.2d 862, 865 (2d Cir.1990) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958)); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066-67 (2d Cir. 1979) (holding that grossly negligent behavior was sufficiently culpable to impose the sanction of evidence preclusion). A party's "persistent refusal to comply with a discovery order presents sufficient evidence of willfulness …." *Phelan v. Cambell*, 2012 WL 407161, at *5 (N.D.N.Y. Jan. 19, 2012) (citation omitted) (dismissing the complaint of a *pro se* plaintiff who refused to submit to a deposition), *adopted by*, 2012 WL 407147 (N.D.N.Y. Feb. 8, 2012), *aff'd*, 507 F. App'x 14 (2d Cir. 2013) (finding that the plaintiff "willfully refused to comply with the magistrate judge's discovery orders"). Among the factors I should consider in selecting an appropriate sanction are the extent and duration of the noncompliance, the adequacy of notice of the consequences of

9

noncompliance, the culpability of the noncompliant party, and the efficacy of lesser sanctions. *See Phelan*, 507 Fed. App'x 14, 15 (2d Cir. 2013) (citation omitted).

In considering those factors, I conclude that outright dismissal would be excessive, and I decline to recommend that sanction. To be sure, the first three factors do favor dismissal: Williams has disobeyed three separate discovery orders in the past year, he was repeatedly warned that his noncompliance could result in the dismissal of the case, and he nevertheless willfully refused to comply with his clearly defined obligations. Dismissal is inappropriate, however, because a lesser sanction will suffice to allow the parties to litigate the issues on the merits while preventing Williams from gaining an unfair advantage from his failure to provide discovery.

Because Williams has repeatedly failed to provide any discovery to the defendants, I will not compel the defendants to respond to his outstanding requests, I preclude him from seeking any further discovery, and I also preclude him from offering any evidence in support of his claims that is within his custody or control and that he has not yet produced. That combination of sanctions preserves Williams's ability to litigate his claims based on his own testimony but prevents him from subjecting the defendants to a discovery process in which they alone bear the burdens of production.

Consistent with the foregoing ruling, I deny all of Williams's motions for discovery relief and sanctions (including his request to dismiss the defendants' counterclaim, which appears to be largely predicated on complaints about the discovery process). I further order that discovery is closed.

III.     Conclusion

For the reasons set forth above, I deny the plaintiff's motions for disqualification, discovery relief, and sanctions; I decline to recommend that the court grant the defendants' motion to dismiss the case as a sanction for discovery violations; and I grant the defendants alternate relief in the form of the sanctions that preclude the plaintiff from seeking any further discovery or introducing evidence

within his custody or control that has not already been produced. Based on that ruling, I order that discovery is closed.

I respectfully direct the defendants' counsel to promptly provide a copy of this order to the plaintiff. Any party seeking to file a motion for summary judgment may initiate the process by submitting a request, no later than August 31, 2015, for a pre-motion conference before the assigned district judge. Should no such motion be sought, the parties must contact the district judge's chambers by the same deadline of August 31, 2015, to schedule a pretrial conference and the submission of a joint pretrial order.

SO ORDERED.

Dated: Brooklyn, New York
August 3, 2015

/s/
JAMES ORENSTEIN
U.S. Magistrate Judge