FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ DEC 14 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY WILLIAMS,

        Plaintiff,

**DECISION & ORDER**
10-CV-1022 (WFK)(JO)

v.

NEW YORK STATE OFFICE OF MENTAL
HEALTH, *et al.*,

        Defendants.
-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

In this section 1983 action, *pro se* plaintiff Anthony Williams ("Plaintiff" or "Williams") alleges that defendants violated his constitutional rights while he was involuntarily retained at a state psychiatric center after being found incompetent to stand trial on criminal charges. Previously, the Court partially granted defendants' motion for judgment on the pleadings and dismissed several defendants from this action. The remaining defendants now move for summary judgment with respect to all claims. The Court referred this motion to Magistrate Judge James Orenstein for a report and recommendation, while also asking the magistrate judge to consider whether a guardian *ad litem* should be appointed for Williams. Magistrate Judge Orenstein issued two reports in which he recommended that defendants' motion for summary judgment be granted and that no guardian *ad litem* be appointed. For the reasons that follow, the Court adopts both reports in their entirety.

## BACKGROUND

### A. Factual History

The Court assumes familiarity with the factual and procedural history of this case as set forth in Magistrate Judge Orenstein's reports. *See* Report and Recommendation dated Aug. 29, 2017, ECF No. 268 ("MSJ R&R"); Report and Recommendation dated Aug. 29, 2017, ECF No. 269 ("Guardianship R&R"). Briefly, on September 8, 2009, Williams was admitted to Kingsboro Psychiatric Center ("KPC") after being found incompetent to stand trial on criminal charges of petit larceny and criminal possession of stolen property in the fifth degree. Defendants' Rule 56.1 Statement of Material Facts dated Apr. 20, 2016, ECF No. 249 ("Def.

56.1") ¶¶ 10, 59.¹ Following his admission to KPC, two psychiatrists at the facility certified that Williams met the standard to be involuntarily admitted for 60 days under New York Mental Hygiene Law ("MHL") § 9.27. Def. 56.1 ¶ 63; *see* MHL § 9.33(a) (no involuntary retention for more than 60 days without court approval). The psychiatrists made this determination based on Williams's psychiatric condition (which included schizoaffective and bipolar disorder), his symptoms (which included grandiose and paranoid delusions, disorganized thought processes, and hostile and threatening behavior), and his history of substance abuse and criminal activity. Def. 56.1 ¶ 62. In the psychiatrists' view, Williams would pose a danger to himself or others if discharged into the community. *Id.*

On September 14, 2009, Williams met with a court-appointed attorney from the Mental Hygiene Legal Service ("MHLS") to discuss his involuntary commitment and legal options available to him. *Id.* ¶ 65.² Three days later, Williams, through counsel, requested a hearing under MHL § 9.31 as a predicate to seeking his discharge from KPC. Def. 56.1 ¶ 66; MHL § 9.31(a) ("If, at any time prior to the expiration of sixty days from the date of involuntary admission . . . , [a patient] gives notice in writing to the director of request for hearing on the question of need for involuntary care and treatment, a hearing shall be held . . . ."). A hearing

---

¹ Citations to paragraphs of defendants' Rule 56.1 statement incorporate by reference the evidentiary citations in those paragraphs. As noted by Magistrate Judge Orenstein, Williams has not contested the facts contained in defendants' Rule 56.1 statement, despite receiving notice of the consequences of not doing so. MSJ R&R at 1, 5 n.1; Loc. Civ. R. 56.2. Thus, the facts asserted in defendants' statement are deemed admitted. *See, e.g., Laporte v. Keyser*, 12-CV-9463, 2014 WL 4694344, at *1 n.1 (S.D.N.Y. Sept. 18, 2014) (Sullivan, J.).

² "The Mental Hygiene Legal Service is a New York State agency responsible for representing, advocating and litigating on behalf of individuals receiving services for a mental disability." *Xiao Qing Liu v. New York State Dep't of Health*, 16-CV-4046, 2017 WL 3393944, at *7 n.6 (S.D.N.Y. Aug. 7, 2017) (Ramos, J.). Williams named his MHLS attorney, Taylor Green, as a defendant in this action, but the Court previously dismissed all claims against him. *See* ECF No. 158 at 13.

took place on September 24, 2009 before Justice Anthony Cutrona of New York Supreme Court, Kings County. Def. 56.1 ¶ 67. Justice Cutrona found that Williams posed a danger to himself or others and ordered that he be retained until November 7, 2009—the remainder of the 60-day period for which his involuntary retention had previously been authorized. *Id.* ¶¶ 73-74. Later that day, Williams's MHLS attorney filed an application under MHL § 9.35 requesting that a jury rehear and review Justice Cutrona's order. *Id.* ¶ 76; MHL § 9.35 ("If a person who has been denied release or whose retention [or] continued retention . . . has been authorized pursuant to this article . . . he may . . . obtain a rehearing and a review of the proceedings already had . . . . [A] jury [shall] be summoned and shall try the question of the mental illness and the need for retention of the patient . . . ."). At the request of Williams's MHLS attorney, the proceeding was adjourned multiple times until the authorized 60 days of retention passed. Def. 56.1 ¶¶ 77-78, 80, 82, 84; MSJ R&R at 2-3, 8. Accordingly, on November 9, 2009, Justice Bert Bunyan of New York Supreme Court, Kings County, who was to preside over the MHL § 9.35 proceeding, dismissed Williams's request for a jury review as moot. Def. 56.1 ¶ 84.

Previously, on November 4, 2009, three days before the passage of the 60-day retention period, defendant Dr. Andrea Norton, KPC's Director of Psychiatry, filed an application to retain Williams for an additional period not to exceed six months under MHL § 9.33. *Id.* ¶ 83; MHL § 9.33(a) ("If the director shall determine that a patient admitted . . . is in need of retention and if such patient does not agree to remain in such hospital as a voluntary patient, the director shall apply to the supreme court or the county court in the county where the hospital is located for an order authorizing continued retention."). Dr. Norton's application was based in part on the opinion of named defendant Dr. Jacqueline Castille, who served as Williams's treating

psychiatrist at KPC.[3] Def. 56.1 ¶ 83. In Dr. Castille's view, Williams was highly symptomatic, lacked insight into his mental illness, and would pose a danger to himself or others if discharged. *Id.* Hearings on the § 9.33 application took place in November and December 2009 before the New York Supreme Court, Kings County. *Id.* ¶ 85. KPC staff escorted Williams to court for the hearings, where he was represented by MHLS. *Id.* ¶¶ 86-87. In the course of those proceedings, defendant Dr. Manjula Vikas, a KPC psychiatrist, testified that Williams should be retained given the danger he would pose if discharged. *Id.* ¶¶ 88-89. On December 3, 2009, Justice Cutrona issued an order granting Dr. Norton's application and authorizing Williams's retention for a period not to exceed six additional months. *Id.* ¶ 90.

The next day, on December 4, 2009, Williams assaulted Dr. Vikas, causing injuries to her face, head, hand, and foot. *Id.* ¶ 91; Declaration of Manjula Vikas dated Mar. 31, 2016, ECF No. 255, ¶ 26. KPC staff responded by administering emergency medication to Williams. Def. 56.1 ¶¶ 101, 105. As a result of the assault, Williams was arrested, discharged from KPC, and remanded to Rikers Island. *Id.* ¶¶ 92-93. MHLS filed another MHL § 9.35 application on Williams's behalf for a jury to review Justice Cutrona's December 3, 2009 order, but the proceeding, which was scheduled for March 10, 2010 never occurred because Williams was no longer retained at KPC by that time. *Id.* ¶¶ 94, 96.

## B. Reports and Recommendations

Two of Magistrate Judge Orenstein's reports and recommendations are now before the Court. As discussed below, in the first report, Magistrate Judge Orenstein recommends that the Court grant summary judgment and dismiss all claims against the four remaining named

---

[3] As discussed below, Williams named Dr. Castille as a defendant in this action, but he has failed to effect service of process on her. *See infra* at 5 n.4

defendants—specifically, KPC Unit Chief Barbara Burroughs, KPC Director of Psychiatry Dr. Norton, KPC psychiatrist Dr. Vikas, and KPC treating psychiatrist Dr. Castille.[4] In the second report, Magistrate Judge Orenstein recommends that the Court decline to appoint a guardian *ad litem* for Williams.

### 1. First Report and Recommendation: Defendants' Motion for Summary Judgment

Liberally construing the amended complaint, Magistrate Judge Orenstein found Williams alleged that defendants violated his constitutional rights by: (1) denying him access to a jury review of his involuntary civil commitment; (2) failing to offer him adequate psychological counseling; (3) forcing him to take medication over his objection; (4) interfering with his right to practice his religion; (5) denying him access to mail and to the telephone; and (6) depriving him of fresh air. MSJ R&R at 4.[5] As explained below, Magistrate Judge Orenstein found Williams had failed to create a triable issue of fact with respect to each of these six claims.

*First*, concerning Williams's contention that defendants denied him a jury review of his involuntary commitment, Magistrate Judge Orenstein construed this claim as alleging a Fourteenth Amendment due process violation. MSJ R&R at 6-7. Magistrate Judge Orenstein found Williams's involuntary commitment deprived him of a liberty interest, but Williams

---

[4] The Court has already dismissed the claims against all other defendants. *See* ECF No. 158. Dr. Castille, who has not worked at KPC since at least April 2010, was never served. ECF Nos. 16, 41. Accordingly, as recommended by Magistrate Judge Orenstein, the Court dismisses all claims against her without prejudice. *See* MSJ R&R at 22 (citing Fed. R. Civ. P. 4(m)).

[5] As noted by Magistrate Judge Orenstein, Williams also alleged he was subject to physical abuse, but Williams does not elaborate on the factual predicate for this allegation. *See* MSJ R&R at 4, 10 n.2. To the extent Williams alleges the physical abuse occurred when KPC staff involuntarily medicated him, the Court addresses this argument below. *See infra* at 6-7, 14-15. To the extent Williams has another incident in mind, the Court dismisses this claim without further discussion, as Williams has failed to point to any evidence to support it.

5

received all the process due given that defendants adhered to MHL's involuntary commitment scheme. *Id.* at 7 (citing *Jelich v. Hogan*, 09-CV-3278, 2009 WL 3497495, at *2 (E.D.N.Y. Oct. 27, 2009) (Cogan, J.)).

*Second*, regarding Williams's complaint that defendants denied him individual psychological counseling, Magistrate Judge Orenstein construed this argument as alleging that he received inadequate medical care in violation of the Fourteenth Amendment. *Id.* at 8. Analyzing the claim under the standard set out in *Youngberg v. Romeo*, 457 U.S. 307 (1982), the magistrate judge found the claim failed as a matter of law because there was no evidence that his treatment at KPC—which included "psychological counseling, stress management counseling, and group stress management"—departed from accepted medical standards. MSJ R&R at 9. Magistrate Judge Orenstein also found the claim failed because Williams cited no evidence indicating defendants were personally involved in any decision to deny him individual counseling. *Id.* at 10; *see, e.g., Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotation marks and citation omitted)).

*Third*, with respect to Williams's assertion that he was involuntarily medicated, Magistrate Judge Orenstein construed this contention as asserting a Fourteenth Amendment due process violation. MSJ R&R at 10. While recognizing patients have a liberty interest in not being medicated against their will, Magistrate Judge Orenstein noted this interest was not absolute and was overridden when the failure to forcibly medicate would create a substantial likelihood of physical harm to the patient or to others. *Id.* at 10-11. Given that Williams was involuntarily medicated only when he was violent or threatened violence, the magistrate judge concluded there was no triable issue as to whether Williams was deprived of due process.

6

Moreover, Magistrate Judge Orenstein pointed out that there was no evidence the moving defendants were personally responsible for involuntarily medicating Williams. *Id.* at 12.

*Fourth*, regarding Williams's argument that defendants impeded his ability to practice his religion, Magistrate Judge Orenstein construed this argument as alleging a First Amendment free-exercise claim. *Id.* To the extent the claim was premised on his inability to attend religious services, Magistrate Judge Orenstein found it to be at odds with evidence that he attended such services and also saw representatives of various faiths. *Id.* at 13-14. Further, Magistrate Judge Orenstein noted that none of the defendants were responsible for administering religious services at KPC. *Id.* at 14. Finally, although Williams once described himself as an "[O]rthodox [J]ew – practicing holistic medicine," Magistrate Judge Orenstein rejected any attempt to base a free-exercise claim on him being forcibly medicated, finding that defendants had a compelling interest in medicating him to protect the physical safety of KPC personnel. *Id.* at 13, 14-15.[6]

*Fifth*, concerning Williams's assertions that defendants interfered with his court-related mail and restricted his telephone use in a way that impeded his communications with counsel and the court, Magistrate Judge Orenstein construed these arguments as asserting violations of Williams's right to access the courts under the First Amendment. MSJ R&R at 15-18. Regarding the alleged mail interference, Williams speculated Ms. Burroughs and Dr. Vikas tampered with his incoming or outgoing mail, but Magistrate Judge Orenstein found no evidence in support of this theory. *Id.* at 16. With respect to telephone access, Magistrate Judge Orenstein noted evidence indicating Williams's telephone use was limited on at least two occasions. *Id.* at

---

[6] Magistrate Judge Orenstein assumed that holistic medicine was integral to Williams's faith, even though, apart from identifying as an "[O]rthodox [J]ew – practicing holistic medicine," Williams had also professed to be Christian, Eastern Orthodox, and Catholic at certain points. MSJ R&R at 13 & n.4.

7

17-18. To be actionable, however, Williams had to show a "pattern of refusal," which he did not do. *Id.* at 17 (quoting *Brown v. Brabazon*, 95-CV-4183, 1998 WL 177612, at *3 (E.D.N.Y. Apr. 13, 1998) (Johnson, J.), *aff'd*, 166 F.3d 1199 (2d Cir. 1998)). Moreover, despite any restrictions placed on his telephone access, Williams had other means of communicating with the outside world, which further undermined his claim. *Id.* at 18. Lastly, Williams failed to demonstrate any cognizable injury resulting from any telephone limitations. *Id.* For these reasons, the magistrate judge recommended that this Court dismiss the claim.

*Sixth*, regarding Williams's complaint that defendants deprived him of fresh air, Magistrate Judge Orenstein construed this claim as alleging either that defendants deprived him of his Eighth Amendment right to exercise or they were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment. *Id.* at 18-20. Under the Eighth Amendment theory, the claim failed because the record showed Williams could normally go outside and participate in recreational activities, and his ability to do so was restricted only twice—once after KPC staff observed him selling cigarettes against KPC policy in November 2009 and again after Williams assaulted Dr. Vikas the next month. *Id.* at 19. With respect to any Fourteenth Amendment claim of deliberate indifference, Magistrate Judge Orenstein noted that Williams believed fresh air was needed to treat his asthma, but no credible medical evidence supported this theory. *Id.* at 20. Moreover, the record showed KPC actively monitored and treated his asthma. *Id.* Thus, the magistrate judge concluded this claim failed as a matter of law.

Lastly, as an alternative ground for dismissal, Magistrate Judge Orenstein recommended that the Court find defendants enjoyed qualified immunity. *Id.* at 20-22. As noted by the magistrate judge, qualified immunity protects officials from liability "as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

8

would have known.'" *Id.* at 20 (quoting *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007)). Even if Williams's rights were violated, Magistrate Judge Orenstein found the defendants did not act in a manner they would have reasonably believed to be unlawful. *Id.* at 21-22. Thus, Magistrate Judge Orenstein concluded that all defendants were entitled to qualified immunity.

### 2. Second Report and Recommendation: Guardian *Ad Litem*

In his second report, Magistrate Judge Orenstein recommended that the Court decline to appoint a guardian *ad litem* for Williams. Guardianship R&R at 4. Preliminarily, Magistrate Judge Orenstein noted that Williams had expressed a desire to retain control over this action and that courts should not lightly impose a guardian over objection because litigants have a liberty interest in "avoiding the stigma of being found incompetent" and "retaining personal control over the litigation." *Id.* at 2-3 (citations omitted). After reviewing Williams's recent medical records, Magistrate Judge Orenstein was unpersuaded there was sufficient evidence to override his desire to control the prosecution of his claims. The magistrate judge noted, "Williams's submissions indicate an ability to identify and vindicate his interests in this case." *Id.* at 4. Thus, Magistrate Judge Orenstein concluded that no *ad litem* appointment was necessary. *Id.*

### 3. Williams's Objections and Defendants' Response

After requesting extensions of time to do so (ECF Nos. 272, 275), Williams filed objections to Magistrate Judge Orenstein's recommendations.[7] Objections to Report and Recommendation filed Oct. 11, 2017, ECF No. 278 ("Pl. Objections"). In his submission, Williams appears to object only to the first report in which Magistrate Judge Orenstein recommended that summary judgment be granted, but not to the second one in which Magistrate

---

[7] Though the Court did not previously rule on Williams's extension requests, the Court hereby grants them and deems his objections timely filed.

Judge Orenstein recommended against appointing a guardian *ad litem*. In their response, defendants argue Williams's objections are general and conclusory. As a result, they contend that the Court should review Magistrate Judge Orenstein's findings strictly for clear error.[8] *See* Defs.' Resp. to Plaintiff's Objections dated Oct. 26, 2017, ECF No. 280, at 3-4. Even if the Court conducts a *de novo* review, however, defendants argue the Court should overrule Williams's objections and adopt Magistrate Judge Orenstein's recommendations. *Id.* at 4-14.

## DISCUSSION

### A. Standards of Review

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "Objections to a Report and Recommendation are to be 'specific and are to address only those portions of the proposed findings to which the party objects.'" *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (Owen, J.) (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992) (Arcara, J.)). Thus, "[w]hen a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Chiari v. N.Y. Racing Ass'n Inc.*, 972 F. Supp. 2d 346, 351 (E.D.N.Y. 2013) (Feuerstein, J.) (quoting *Frankel v. City of New York*, 06-CV-5450, 07-CV-3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009) (Swain, J.)). While "the objections of parties appearing *pro se* are generally accorded leniency, even a *pro se* party's

---

[8] Like Williams, defendants focus on Magistrate Judge Orenstein's first report and say nothing with respect to the guardianship issue.

objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal." *Augustin v. Capital One*, 14-CV-179, 2015 WL 5664510, at *1 (E.D.N.Y. Sept. 24, 2015) (Amon, C.J.) (quotation marks, citations, and alterations omitted).

"On a defendant's motion for summary judgment, courts must 'construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in [his] favor.'" *Richardson-Holness v. Alexander*, 196 F. Supp. 3d 364, 369 (E.D.N.Y. 2016) (Gershon, J.) (quoting *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 65 (2d Cir. 2014)). Summary judgment is proper when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). Though the Court must read a *pro se* party's papers liberally and interpret them to raise the strongest arguments they suggest, "a *pro se* litigant is not exempt from the requirement of opposing a motion for summary judgment by coming forward with evidence sufficient to make out genuine issues for trial. Mere speculation or self-serving representations are insufficient." *Boghossian v. Hudson Meridian Constr. Grp., LLC*, 09-CV-8893, 2011 WL 13176012, at *2 (S.D.N.Y. June 20, 2011) (Hellerstein, J.) (citations omitted), *aff'd*, 475 F. App'x 806 (2d Cir. 2012).

**B. Application**

**1. Summary Judgment**

Regardless of the standard of review the Court applies to Magistrate Judge Orenstein's findings, the Court would adopt both reports in their entirety. As an initial matter, Williams's

objections are general and conclusory.[9] The objections include no evidentiary citations. Nor do they mention a single defendant by name, let alone describe instances in which a defendant was personally involved in the violation of Williams's constitutional rights. For these reasons, the clear-error standard is appropriate. *See, e.g., Whitfield v. Graham*, 10-CV-3038, 2017 WL 4060571, at *2 (S.D.N.Y. Sept. 13, 2017) (Sullivan, J.) (when a "party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error" (quotation marks and citation omitted)). Having reviewed Magistrate Judge Orenstein's reports for clear error and finding none, the Court adopts the reports in their entirety.

Even if the Court were to conduct a *de novo* review, the result would be the same. Although the legal bases for Williams's various claims are not clear from his submissions, the Court concludes that Magistrate Judge Orenstein interpreted his submissions to raise the strongest legal claims they suggest. *See, e.g., McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) ("As we have repeatedly stated, we liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." (quotation marks, internal editing, and citation omitted)). Nonetheless, Williams's claims lack evidentiary support and are dismissed for that reason.

*First*, concerning Williams's claim that he was denied a jury review of his involuntary retention under MHL § 9.35, federal courts have repeatedly held that the MHL's involuntary-

---

[9] *See, e.g.*, Pl. Objections at 1 ("Defendants did violate his equal protection of law – State liberty interest and US Constitutional Right to Court, Phone, and Letter to Court."), at 5 ("The Plaintiff treatment plan was violative of accepted medical practice."), at 6 ("The Magistrate recommend [*sic*] misconstrued the Plaintiff liberty interest under New York Constitution Equal Protection of Law Mental Hygiene for some accidental oversight and fail [*sic*] to see the vindictive foul act committed against a Civil Patient Who Did not Belong or accepted any systematic medication procedure for nonexisting illnesses.").

12

commitment scheme satisfies the requirements of due process. *See, e.g., Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir. 1983) ("[H]aving considered the New York M.H.L. in its entirety, our inquiry leads us to conclude that the statute does meet the minimum facial requirements of due process—both substantive and procedural."); *Meadows v. City of New York*, 10-CV-286, 2011 WL 864832, at *6 (E.D.N.Y. Mar. 11, 2011) (Gleeson, J.) ("New York's overall statutory scheme governing involuntary commitments has been held facially sufficient to meet the requirements of due process." (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir. 1995)). Here, there is no evidence that defendants departed from the statutory protocol and, thus, Williams cannot demonstrate a due process violation. *See Jelich*, 2009 WL 3497495, at *2 ("If the defendant adhered to the procedural requirements of the relevant statutory section [of the MHL], the demands of substantive and procedural due process have been met and no claim under 42 U.S.C. § 1983 has been stated."). As noted by Magistrate Judge Orenstein, Williams did not initially receive a jury review because the proceeding was adjourned (at the request of his MHLS counsel, not defendants) until the order being challenged expired. MSJ R&R at 2-3, 8; *supra* at 3. Regarding his request for a jury review of the subsequently issued December 3, 2009 order, this proceeding also became moot—not through any fault of defendants, but because Williams was discharged from KPC after assaulting Dr. Vikas. *Supra* at 4. Because defendants were not responsible for depriving Williams of a jury review, this claim fails as a matter of law.

*Second*, regarding Williams's complaint about not receiving adequate psychological counseling, the record shows Williams received extensive psychological treatment at KPC—including anger management counseling, stress management counseling, and access to a cognitive skills enhancement program. Def. 56.1 ¶¶ 107-14. To the extent Williams was denied

individualized counseling, he has pointed to no evidence that the failure to provide such counseling was a substantial departure from accepted standards. *See Muhammad v. New York City*, 15-CV-5603, 2016 WL 4367970, at *4 (S.D.N.Y. Aug. 12, 2016) (Swain, J.) ("The substantial departure standard, as articulated in *Youngberg* . . . applies to involuntarily committed patients raising Fourteenth Amendment Due Process claims. Under the *Youngberg* test, a professional's medical decision is accorded a presumption of validity; to demonstrate inadequate medical treatment, the plaintiff must show the medical treatment substantially departed from the accepted standards."). Because the claim lacks evidentiary support, there is no triable issue of fact.[10]

*Third*, concerning Williams's complaint that he was involuntarily medicated, Williams's treatment records indicate he was forcibly medicated twice—once in November 2009 when he yelled at KPC staff members and threatened to stab them in the eyes, and again in December 2009 after Williams assaulted Dr. Vikas. Def. 56.1 ¶¶ 101-05. Given the danger posed by Williams, no rational juror could find that forcibly medicating him gave rise to a constitutional violation—especially given the deference owed to medical professionals in these situations. *See, e.g., United States v. Hardy*, 724 F.3d 280, 295 (2d Cir. 2013) ("[D]eference . . . is owed to medical professionals who have the fulltime responsibility of caring for mentally ill inmates . . .

---

[10] To the extent Williams argues the lack of individualized counseling amounted to deliberate indifference to his medical needs, Williams's mere disagreement with the treatment prescribed to him does not sustain a claim of deliberate indifference. *See, e.g., Figueroa v. Semple*, 12-CV-982, 2015 WL 3444319, at *7 (D. Conn. May 28, 2015) (Bolden, J.) (argument that defendants failed to provide "additional individual counseling" represented "nothing more than a disagreement about the treatment provided, which is not cognizable as deliberate indifference"); *see also Beckford v. Portuondo*, 151 F. Supp. 2d 204, 218 (N.D.N.Y. 2001) (Kahn, J.) ("Nowhere does Plaintiff allege that the failure to provide him . . . additional treatments [including therapy] resulted in an urgent threat to his life or limb or was otherwise so grossly inadequate to rise to the level of deliberate indifference.").

14

and who possess, as courts do not, the requisite knowledge and expertise to determine whether the drugs should be used in an individual case." (citation omitted)); *Inesti v. Hogan*, 11-CV-2596, 2013 WL 5677046, at *11 (S.D.N.Y. Sept. 30, 2013) (Crotty, J.) ("[A] patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution." (quoting *Odom v. Bellevue Hosp. Ctr.*, 93-CV-2794, 1994 WL 323666, at *3 (S.D.N.Y. July 5, 1994) (Haight, J.))). Further, as noted by Magistrate Judge Orenstein, aside from Dr. Castille (who has not been served process, *see supra* at 5 n.4), there is no evidence that any defendant was personally involved in the involuntary medication of Williams. *See* MSJ R&R at 12. For these reasons, the claim is dismissed.

*Fourth*, with respect to Williams's contention that KPC staff interfered with his ability to practice his religion, this claim lacks evidentiary support. Even assuming that the record contains evidence of Williams's sincere religious beliefs (which is questionable given his professed adherence to multiple faiths and his refusal to answer questions about his religion at his deposition), the claim still fails as a matter of law. MSJ R&R at 13 & n.5. Williams testified in a conclusory manner that Drs. Vikas and Castille prevented him from attending religious services, but such bald accusations are insufficient to create a triable issue of fact. Williams's Deposition, ECF No. 251-5 ("Pl. Dep.") at 39:11-40:8; *see Adekoya v. Herron*, 10-CV-6646, 2013 WL 6092507, at *7 (W.D.N.Y. Nov. 19, 2013) (Telesca, J.) ("Plaintiff's allegation that his 'quest for practicing his faith' was 'ignored' is too vague and conclusory to allege any element of a Free Exercise claim."). Indeed, Williams appeared to recognize that he lacked evidence to support this claim, as he complained about not receiving such evidence in discovery. Pl. Dep. at 40:10-41:1. Given the lack of evidentiary support, the claim fails as a matter of law.

15

*Fifth*, regarding Williams's complaints about mail interference and telephone restrictions, the record is devoid of evidence to support these claims. With respect to mail interference, Williams cites no evidence demonstrating that a single piece of incoming or outgoing mail was tampered with, let alone evidence of a pattern of tampering that would give rise to a constitutional violation. *See, e.g., Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." (quotation marks and citations omitted)). Regarding Williams's telephone use, the record indicates Williams spent long periods of time on the phone—to the detriment of other KPC patients. *See, e.g.*, Medical Records, ECF No. 254-1, at AWilliams00114 ("He continues to monopolize the public pay phone . . . for long discussions . . . ."), 00196 ("Patient is constantly on the public phone, not allowing his peers to use the phone."), 00239 ("Williams continues to spend lengthy time on the phone not allowing others to use [it].").

Williams describes two or three instances in which defendants cut his telephone calls short or prevented him from making a call. MSJ R&R at 17-18. These incidents do not amount to constitutional violations, especially since other means of communication were available to Williams. *See Ahlers v. Townsend*, 12-CV-0575, 2014 WL 4365277, at *5-7 (N.D.N.Y. Aug. 28, 2014) (Hurd, J.) (dismissing civilly committed plaintiff's claim that defendants violated his First and Fourteenth Amendment rights by denying him telephone privileges); *Yeldon v. Hogan*, 08-CV-769, 2010 WL 983819, at *8 (N.D.N.Y. Mar. 15, 2010) (Mordue, C.J.) (dismissing similar First Amendment claim), *aff'd*, 400 F. App'x 580 (2d Cir. 2010); *Brown*, 1998 WL 177612, at *3 ("Plaintiff's complaint fails to allege that [defendant's] two refusals to allow Plaintiff to make legal telephone calls deprived him of the ability to consult with his attorney.

Certain restrictions on inmates' access to counsel via telephone may be permitted as long as they have some manner of access to counsel." (citation omitted)). Moreover, Williams has failed to produce any evidence that these restrictions resulted in "an actual injury, i.e., that [defendants] frustrated or impeded his efforts to pursue a non-frivolous legal claim." *Yeldon*, 2010 WL 983819, at *9. For these reasons, Williams's claims based on alleged mail tampering and telephone restrictions are dismissed.

*Sixth*, regarding Williams's complaint that defendants deprived him of fresh air, this claim fails as a matter of law regardless of whether the Court construes it as alleging that defendants violated his right to exercise under the Eighth Amendment or that defendants were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment. Williams's recreation time was cut short on only two occasions—and only after Williams was caught engaging in misconduct (that is, selling cigarettes in violation of KPC policy on one occasion and physically assaulting Dr. Vikas on another). Such limited restrictions do not rise to the level of a constitutional violation. *See, e.g., Williams v. Goord*, 142 F. Supp. 2d 416, 426 (S.D.N.Y. 2001) (Scheindlin, J.) (depriving plaintiff of exercise for a "relatively brief period of time" is not unconstitutional) (collecting cases). To the extent Williams instead complains defendants were deliberately indifferent to his medical needs by depriving him of fresh air given his asthma diagnosis, there is no evidence that fresh air was a viable treatment for his asthma, much less that defendants were deliberately indifferent to his medical needs by not affording fresh air to him. Williams's belief that fresh air would have improved his asthma does not make the claim actionable. *See, e.g., Monroe v. Gerbing*, 16-CV-2818, 2017 WL 6614625, at *7 (S.D.N.Y. Dec. 27, 2017) (Karas, J.) ("[M]ere disagreement over the proper treatment does not create a constitutional claim." (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.

17

1998))). For these reasons, defendants' motion for summary judgment is granted.

### 2. Guardian *Ad Litem*

In his second report, Magistrate Judge Orenstein recommends that the Court decline to appoint a guardian *ad litem* for Williams. The Court assumes familiarity with the relevant procedural and factual history as articulated in prior orders and reports and recommendations. *See* ECF Nos. 23, 30, 43, 54, 92, 116, 120, 241, 243, 269. In short, near the outset of this case, the Court asked Magistrate Judge Orenstein to consider whether a guardian *ad litem* should be appointed for Williams given that he had been found incompetent to stand trial on criminal charges. ECF Nos. 30, 92. After reviewing medical records and speaking with Williams at a court conference, Magistrate Judge Orenstein recommended against appointing a guardian *ad litem*, ECF No. 92 at 7-11, and the Court adopted Magistrate Judge Orenstein's recommendation in July 2011, ECF No. 116.

In August 2016, after learning Williams had been rearrested and again found incompetent to stand trial, the Court asked Magistrate Judge Orenstein to reconsider whether to appoint Williams a guardian. ECF No. 241. To make an informed assessment, Magistrate Judge Orenstein directed defendants to provide records of Williams's current treatment status. Guardianship R&R at 1-2. After reviewing Williams's recent clinical files, Magistrate Judge Orenstein was unpersuaded there was sufficient evidence to conclude Williams was incompetent. *Id.* at 3. Although recent treatment records described Williams as irritable and uncooperative, Magistrate Judge Orenstein noted that upon his discharge from his last hospitalization, a psychiatrist opined that Williams was mentally stable and not in need of medication. *Id.* Thus, the magistrate judge recommended that the Court decline to appoint a guardian *ad litem* for Williams. *Id.* at 4.

Because Williams has not objected to Magistrate Judge Orenstein's second report and recommendation, the Court reviews it for clear error.[11] Finding no clear error, the Court adopts the second report in its entirety and does not appoint a guardian *ad litem* for Williams. If the Court were to conduct a *de novo* review, it would reach the same result. The Court is not convinced the appointment of a guardian *ad litem* is appropriate, especially given Williams's apparent desire to keep control of this lawsuit and given that he was found mentally stable when last discharged from the hospital. For these reasons, the Court declines to appoint a guardian *ad litem*.

## CONCLUSION

The Court adopts Magistrate Judge Orenstein's reports and recommendations, ECF Nos. 268 and 269, in their entirety. Defendants' motion for summary judgment, ECF No. 247, is granted, and the motion to appoint a guardian *ad litem*, ECF Entry dated 8/4/2016, is denied. The Court grants Williams's requests for extensions of time to object to Magistrate Judge Orenstein's reports and recommendations, ECF Nos. 272 and 275, but overrules his objections. All claims against Dr. Castille, who has never been served process, are dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.

---

[11] Although the Court requested a report and recommendation from Magistrate Judge Orenstein on this subject, courts have concluded that the guardian *ad litem* issue is a non-dispositive matter that magistrate judges may hear and determine. *See, e.g., Scott v. District of Columbia*, 197 F.R.D. 10, 11 (D.D.C. 2000); *Rubin v. Smith*, 882 F. Supp. 212, 217 (D.N.H. 1995). Of course, "[d]istrict courts review nondispositive orders issued by a magistrate judge for clear error." *Cohan v. Columbia Sussex Mgmt., LLC*, 12-CV-3203, 2016 WL 1045532, at *2 (E.D.N.Y. Mar. 15, 2016) (Seybert, J.) (citing Fed. R. Civ. P. 72(a)). That said, because Williams has not objected to Magistrate Judge Orenstein's second report and recommendation, the clear error standard would apply even if the guardianship issue were dispositive. *See, e.g., T.Y. v. New York City Dep't of Educ.*, 213 F. Supp. 3d 446, 454 (E.D.N.Y. 2016) (Matsumoto, J.) ("Where no objections to the Report and Recommendation have been filed, . . . the district court need only satisfy itself . . . that there is no clear error on the face of the record." (quotation marks and citation omitted)).

The Clerk of the Court is directed to terminate all pending motions and to close the case. Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal of this Decision and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of appeal.

**SO ORDERED.**

s/ WFK II
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 14, 2018
Brooklyn, New York